Peter A. Arhangelsky (SBN 291325)
peter.arhangelsky@gtlaw.com
GREENBERG TRAURIG, LLP
2735 E. Camelback Rd., Suite 800
Phoenix, AZ 85016
*Attorney BioGaia USA, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOGAIA USA, LLC, a Missouri Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>PROBIOTIV NATURALS LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-03592<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1.    Plaintiff BioGaia USA, LLC ("BioGaia" or "Plaintiff") files this Complaint against Probiotiv Naturals LLC ("Defendant" or "Probiotiv") seeking damages and equitable relief.  Plaintiff alleges as follows:

### I.    STATEMENT OF THE CASE

2.    This is a false advertising and unfair competition action brought under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), along with supplemental state-law claims under California's Unfair Competition Law, False Advertising Law, and common law.

3.      Probiotiv competes with BioGaia in the sale of probiotic dietary supplements for oral health. Probiotiv markets a product called "Oral Probiotics for Breath, Teeth & Gums" (the "PBT&G Product").

4.      Probiotiv unfairly competes using deceptive and unlawful practices, including use of fake or contrived "consumer" reviews that are not backed by real consumer experience. That practice distorts the perception of Probiotiv's products in the market by increasing their ratings in comparison to other products. Probiotiv's artificial inflation of its product's reputation deceives consumers and injuries BioGaia. Those practices violate state and federal law, including the FTC's prohibition on false or manipulated consumer reviews.

5.      Probiotiv also falsely advertises that its products contain significant levels of live probiotics. It claims to provide consumers with "7 Billion CFU" per serving. But independent testing reveals that the PBT&G Product delivers to consumers just a fraction of that potency, generally less than 10-percent of the promised values on labeling and in marketing. The product is therefore misbranded in violation of food labeling laws, and substantially less potent than advertised.

6.      Probiotiv's pattern of unlawful and deceptive conduct also includes improper promotion of its dietary supplement as a treatment for diseases like Gingivitis. Those claims are in flagrant violation of state and federal law barring use of "drug" claims for dietary supplements.

7.      Moreover, Probiotiv falsely claims that its product is "Made in the USA" and contains only "natural" ingredients. Both claims are materially false. Probiotiv's Product is apparently not manufactured in the United States using domestically sourced ingredients. The Product also includes a host of synthetic or highly processed ingredients rendering the "natural" claim misleading at best.

8.      BioGaia distributes lawfully labeled, scientifically substantiated probiotic products that support oral health, and has invested significantly in research,

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

2

1   regulatory compliance, and reputation-building efforts. Probiotiv's unlawful conduct
2   therefore injures BioGaia by diverting sales and eroding consumer confidence.

3       9.    As alleged in detail below, BioGaia seeks injunctive relief to prohibit
4   further false and unlawful advertising. BioGaia seeks compensatory damages, an
5   order requiring corrective disclosures or remedial action, and all other relief to which
6   it is entitled under federal and state law.

## II. <u>PARTIES</u>

10.    Plaintiff BioGaia USA is a Missouri Limited Liability Company with its
principal place of business in Missouri. BioGaia USA is the U.S. subsidiary and
authorized distributor of probiotic products developed by its Swedish parent
company, BioGaia AB.

11.    BioGaia AB is a leading innovator and supplier of clinically tested
probiotics for human health, including dietary supplements formulated specifically
for oral and dental health. Among its other dietary supplement products, BioGaia
sells a line of probiotic lozenges that support gum health, fresh breath, and oral
microbial balance, distributed under the BioGaia® Prodentis® brand.

12.    BioGaia USA markets and sells its oral probiotic products nationwide,
including extensive sales throughout the State of California where it competes
directly with other probiotic supplement manufacturers. The California market
represents a substantial portion of BioGaia's revenues, and BioGaia has made
substantial investments to grow its brand presence and serve healthcare professionals
and consumers throughout the state. Through those efforts, BioGaia USA has
established valuable commercial relationships and goodwill within California's
highly competitive dietary supplement and natural health product marketplace.

13.    Defendant Probiotiv Naturals LLC is a Delaware Limited Liability
Company. Probiotiv purports to be a Delaware corporation and lists a Delaware

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

address in its corporate filings. But on information and belief, Probiotiv maintains no physical presence in the state of Delaware or within the United States generally.

14.    Instead, the address used in Probiotiv's corporate filings routes to a rented mailbox located inside a major retail store, which serves as a mail drop. The address is apparently used for mail forwarding. Probiotiv's Delaware address is therefore purely nominal, and reflects no genuine corporate operations in that state. Probiotiv lists no physical office location on its website. It apparently maintains no physical offices or operations within the United States.

15.    Probiotiv markets, advertises, and sells a line of dietary supplements, including its PBT&G Product, through online platforms such as Amazon.com and eBay, making its products readily available to consumers throughout the United States, including in California.

16.    The true names and capacities of Defendants sued here as DOES 1 through 10, inclusive, are unknown to Plaintiff. BioGaia therefore sues such defendants by fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Doe Defendants is in some manner responsible for the acts and omissions alleged here.

## III.    <u>JURISDICTION</u>

17.    This Court has subject matter jurisdiction over the action under 28 U.S.C. § 1331 because this case arises under the laws of the United States, including the Lanham Act.

18.    The Court also has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims in this action that they form part of the same case or controversy.

19.    The Court has personal jurisdiction over Defendant Probiotiv, because Probiotiv has purposefully directed its activities into this District and has caused foreseeable harm in this District. Probiotiv markets, sells, and distributes its products

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

into this District, where a substantial portion of the relevant events giving rise to Plaintiff's claims has therefore occurred.

20.    Probiotiv purposefully directed its business activities toward California, including by offering, marketing, and selling products to consumers within the State of California through nationwide retail channels, including Amazon.com and other e-commerce platforms that are widely accessible to and used by California residents. Jurisdiction is therefore appropriate. *See Briskin v. Shopify, Inc.*, No. 22-15815, 2025 WL 1154075 (9th Cir. Apr. 21, 2025) (contacts with California consumers through e-commerce platforms is sufficient for personal jurisdiction).

21.    Probiotiv's online retail strategy is designed to reach consumers across the United States, and in particular, to capture market share within California—the largest consumer economy in the country.  By distributing and selling products directly into California, and by profiting from those sales, Probiotiv has deliberately exploited the California market and California consumers.

22.    Probiotiv has shipped its products directly to California consumers.  On information and belief, that includes shipment through Amazon's Fulfilled by Amazon (FBA) program, where products are stored in California-based warehouses and distributed from within the state.

23.    Those sales have caused foreseeable competitive injuries within California, including by diverting market share away from law-abiding competitors operating in the state, like BioGaia.  Probiotiv's conduct has unlawfully secured sales and consumer loyalty in California, thereby harming BioGaia.

24.    On information and belief, Probiotiv also targets BioGaia and its customer base by purchasing internet search advertising keywords associated with BioGaia's products, including, but not limited to, BioGaia's brand names and product identifiers.  That conduct results in having Probiotiv's competing products appear prominently in online search results when consumers search for BioGaia, thereby diverting potential customers.  Probiotiv's strategic use of BioGaia's goodwill and

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

5

brand recognition to misappropriate consumer attention and steer sales toward its own products demonstrates not only knowledge of BioGaia's market position but a deliberate effort to erode it. That practice reflects Probiotiv's awareness that its conduct is likely to—and in fact does—harm BioGaia's competitive standing, including in California where a substantial portion of BioGaia's customer base is located.

25.    The causes of action asserted in this Complaint arise directly out of Probiotiv's contacts with California, including its sale of the misbranded product to California residents.

26.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant Probiotiv has sold and distributed the accused product into this District through online marketplaces such as Amazon.com, targeting California consumers, including those residing in this District.

27.    In actions brought under the Lanham Act, courts recognize that "a substantial part of the events giving rise to the claims, as required for proper venue, occur in any district where consumers are likely to be confused by the accused goods, whether that occurs solely in one district or in many." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009); *see also OSN Labs, LLC v. Phoenix Energy, LLC*, No. CV-23-01188, 2024 WL 69690, at *5 (D. Ariz. Jan. 5, 2024) ("Venue is proper in this district because Phoenix Energy sells its product within the jurisdictional boundaries of this district. Therefore, 'a substantial part of the events or omissions giving rise to the claim' occurred in this district.").

## IV.    GENERAL ALLEGATIONS

### A.    Probiotiv's Use of Deceptive Product Reviews

28.    Probiotiv artificially and deceptively generated goodwill through fake or engineered consumer reviews in violation of FTC rules in 16 CFR § 465.2.

6

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

29.     Amazon.com is the world's largest online retail marketplace, with millions of products competing for attention.  One of the most prominent and influential features on Amazon's product listings is the customer review system, which allows consumers to leave public feedback about products they purchased. This system includes individual written reviews, star ratings (on a scale of 1 to 5), and aggregated metrics such as the overall star rating and total number of reviews.

30.     Consumer reviews on Amazon serve as a primary source of product information for prospective buyers, who frequently rely on that data when making purchasing decisions.  Products with higher ratings and more favorable review histories are more likely to be featured in search results, recommended listings, and "Amazon's Choice" badges.

31.     In this environment, the manipulation of Amazon reviews—whether through use of fabricated reviews, incentivized postings, review "hijacking," or other deceptive practices—constitutes a form of false advertising and unfair competition. Such manipulation distorts the marketplace by creating the false appearance of quality, popularity, or consumer satisfaction, thereby diverting sales from competitors and misleading consumers who depend on reviews to make informed choices.

32.     Probiotiv's consumer engagements on Amazon.com were analyzed using algorithms designed to identify deception.  Those analyses revealed a high degree of deception implicating at least 75-percent of Probiotiv's "consumer" reviews.

33.     The metrics used to evaluate Probiotiv's reviews included assessment of reviewer histories, phrase repetition, reviewer behaviors, and language modeling. Probiotiv's listings failed many of those elements.

34.     Probiotiv's reviews bear common signs of engineering or deception based on "talking points" given to third parties who offer brand enhancement services. Around 85-percent of Probiotiv's reviews use substantially repetitive phrases.

35.    The independent analysis of the Probiotiv Oral Probiotics on Amazon revealed widespread indicators of inauthentic or unnatural review activity, including but not limited to:   (a) approximately 76% of potentially unnatural reviews were deemed unreliable, indicating a high volume of suspicious activity; (b) roughly 50% of reviewers were "One-Hit Wonders" (i.e., reviewers who have reviewed only the Probiotiv products), which is considered a red flag for fake or planted reviews; (c) a significant number of reviews were posted during high-volume review days, further indicating review stuffing to artificially inflate product visibility and ratings; (d) approximately 85% of the reviews used substantially repetitive phrases, indicating templated or coordinated posting behavior rather than genuine consumer feedback; and (e) the product was assigned a "Low" overall trust grade based on a composite of suspicious reviewer patterns, reviewer ease, and phrase repetition metrics.

36.    As just one example, "Fakespot" is an AI-driven online tool and browser extension that analyzes customer reviews on platforms like Amazon, Walmart, and eBay to detect inauthentic or deceptive reviews.   It evaluates reviews based on linguistic patterns, reviewer behavior, and purchasing history to determine the likelihood that reviews are artificially manipulated or generated.   An analysis of Probiotiv's reviews using Fakespot's algorithm produced a "D" Grade indicating a high degree of deceptiveness.   That analysis reflected anomalous reviewer histories, showed that Amazon had already modified or removed reviews to correct for these concerns, and flagged an apparent "high" degree of "deception involved."

37.    Those conclusions have been confirmed through similar tools (e.g., ReviewMeta, which assigned Probiotiv a "failing" grade based, in part, on the presence of "suspicious reviewers").

38.    Despite those concerning review patterns, Probiotiv's product displays a high average star rating on Amazon, giving the false impression of widespread customer satisfaction and scientific legitimacy.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

39.     Probiotiv's conduct—disseminating false and deceptive advertising claims and bolstering them with a manipulated body of customer reviews—constitutes unlawful, unfair, and fraudulent business conduct within the meaning of the California Unfair Competition Law and the Lanham Act.

40.     To manipulate Amazon reviews, companies can engage third-party marketing firms (or use in-house resources) that specialize in boosting e-commerce product visibility.  The vendor offers a range of services designed to artificially inflate product ratings, including the engineering of bulk fake reviews or solicitation of incentivized reviews.  Vendors may create or coordinate fake Amazon accounts, use VPNs or proxy servers to avoid detection, and deploy scripts to post favorable reviews in bulk.  This coordinated manipulation deceives consumers and undermines fair competition on Amazon's platform.

41.     The Federal Trade Commission (FTC) implemented a comprehensive policy to combat such fake reviews on platforms like Amazon, aiming to protect consumers and ensure fair competition.  In August 2024, the FTC announced a final rule explicitly prohibiting the creation, sale, or dissemination of fake reviews and testimonials.  That rule empowers the FTC to seek civil penalties against violators, enhancing its enforcement capabilities.

42.     Those rules are codified in 16 CFR Part 465.  Section 465.2 expressly bars advertisers from soliciting, creating, or paying for consumer reviews or testimonials that materially misrepresent:  (1) that the review or testimonialist exists; (2) that the reviewer or testimonialist used or otherwise had experience with the product, service, or business that is the subject of the review or testimonial; or (3) the reviewer's or testimonialist's experience with the product, service, or business that is the subject of the review or testimonial.

43.     Those FTC rules therefore prohibit the use of undisclosed fake or false reviews and testimonials; incentivized reviews that are gathered in exchange for compensation; insider reviews and testimonials written by individuals with material

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

connections to the business; company-controlled review websites that purport to provide "independent" or impartial reviews; review suppression techniques; and the misuse of social medial indicators generated by bots or hijacked accounts.

44.     These practices also violate Amazon policies.   Amazon explicitly considers fake or manipulated reviews to be deceptive under its policies.   The company treats any attempt to distort the authenticity of customer feedback—whether through fabricated reviews, paid endorsements, or coordinated manipulation—as a deceptive practice that undermines consumer trust.

45.     The violation of FTC Guides is a predicate act under the California UCL. *See Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (holding that violations of FTC Guides can serve as a UCL predicate because "virtually any state, federal or local law can serve as the predicate for an action under the UCL") (internal quotes omitted).   Courts have therefore allowed claims against businesses using fake reviews on Amazon product pages.   *See, e.g.*, *Minor v. Favorite World, LLC*, No. CV 24-4425, 2024 WL 4834951, at *1 (C.D. Cal. Sept. 17, 2024); *AlphaCard Sys. LLC v. Fery LLC*, No. CV 19-20110, 2020 WL 4736072, at *3 (D.N.J. Aug. 14, 2020) ("The Court finds that Plaintiffs have pled sufficient facts at this stage to state a claim for false advertising based on the alleged business practice of using fake reviews to drive up product ratings."); *Amazon.com, Inc. v. Arobo Trade, Inc.*, No. C17-0804, 2017 WL 3424976, at *1 (W.D. Wash. Aug. 9, 2017) ("these abusive reviews violate the policies that apply to Amazon's sellers").

46.     Probiotiv fails to disclose that it uses fake or contrived consumer reviews to support its products online.   These deceptive practices are therefore actionable under the Federal Lanham Act because Probiotiv has (1) used false or misleading representations about its products; (2) in commerce and in connection with goods or services; (3) those practices have led to or are likely to cause confusion, or to cause mistake as to the approval of goods by another person; and (4) BioGaia has been

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

damaged as a result of those practices. *See Longoria v. Kodiak Concepts LLC*, 527 F. Supp. 3d 1085, 1106 (D. Ariz. 2021) (listing elements under the Lanham Act).

### B. Probiotiv's False and Deceptive Labeling

47.    Defendant advertises and markets its PBT&G dietary supplement as containing "7 Billion CFU" of probiotics per serving, a claim displayed prominently on labeling and marketing on major e-commerce platforms like Amazon.com.

48.    "CFU" stands for "Colony Forming Units," which is the standard measurement used to express the number of viable, live microorganisms in a probiotic supplement.    One CFU represents a single viable microorganism capable of reproducing and forming a colony.  Probiotics with higher CFU counts are perceived as more potent.

49.    The CFU count prominently advertised on Probiotiv's PBT&G label and marketing materials is a primary selling point and a key differentiator in the competitive probiotic supplement market.  Defendant repeatedly emphasizes the "7 Billion CFU" claim on its front label, Supplement Facts panel, and e-commerce product listings, where it appears in bold typeface and is featured as a headline-level representation.

50.    Consumers seeking probiotic products are particularly focused on the quantity of viable organisms per serving, as that metric is widely associated with efficacy, digestive and immune health benefits, and overall product value.  In the supplement industry, higher CFU counts are marketed as premium features, with products commanding higher prices based on such representations.

51.     Defendant's emphasis on the "7 Billion CFU" claim is thus intended to drive purchasing decisions and to compete with other probiotic brands that provide verifiable and clinically significant doses.

52.    Because the product fails to deliver the represented quantity of live probiotics, Defendant gains a commercial advantage through deceptive means,

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

thereby distorting fair competition and harming competitors who accurately represent the potency and stability of their probiotic formulations.

53.     In reality, Probiotiv's product fails to deliver the advertised amount of live probiotic organisms.  Independent laboratory testing of the product, conducted on a per-tablet basis, found that the actual viable counts of key probiotic strains fall drastically short of the amounts represented on the label.

54.     Probiotiv markets its PBT&G product as containing 2 billion CFU of *Streptococcus salivarius* and 5 billion CFU of a proprietary *Lactobacillus* and *Bifidobacterium* blend, per serving, including through front of package claims, in the Supplement Facts panel, in comparative advertising, and in advertising callouts as the following examples show.

a.  In comparative ads:



LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

b. On front-of-package advertising and primary images:



c. On the Supplement Facts panel and images that highlight the CFU count as a selling point:



55.     Testing revealed that the actual content was approximately 150 million CFU of *Streptococcus salivarius* and 700 million CFU of the *Lactobacillus/Bifidobacterium* blend—representing only 7.5% and 10%, respectively, of the labeled amounts.

56.     Those discrepancies confirm that the product either never contained the claimed quantities at the time of manufacture or that it suffers from significant degradation due to poor shelf stability.  In either case, the CFU declarations on the Supplement Facts panel are materially inaccurate and misleading because consumers will not receive product with the potency or efficacy advertised on labeling.

57.     As a result, the product lacks the qualities promised to consumers and retailers, and is misrepresented in commercial advertising in violation of federal and state law.  Probiotiv fails to clearly inform purchasers that its product will not contain the listed amounts at the time of use.

58.     Defendant's conduct violates the "unlawful" prong of the California Unfair Competition Law (Bus. & Prof. Code § 17200), as the product is misbranded under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 343(a)(1)) and FDA regulations governing dietary supplement labeling.  A dietary supplement is misbranded if its labeling is false or misleading in any particular, including misstatements about the amount of active ingredients.

59.     The FDA's labeling guidance for probiotics states that CFU claims should reflect viable organisms through the end of shelf life unless otherwise clearly and non-deceptively qualified.  *See* FDA, "Policy Regarding Quantitative Labeling of Dietary Supplements Containing Live Microbials: Guidance for Industry" (Sep. 2018), at 4 (explaining that declaration of probiotics "in terms of CFUs … promote[s] confidence that a particular dietary supplement product contains the labeled amount of live microbial ingredient, providing the specified number of viable microorganisms

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

throughout the shelf life of the product").[1]  Defendant has not complied with this standard.

60.    Probiotiv's product violates FDA labeling regulations applicable to dietary supplements under the Food, Drug, and Cosmetic Act.  When a dietary supplement label lists a dietary ingredient for which no Reference Daily Intake (RDI) has been established—like probiotics—the amount declared on the Supplement Facts panel must be accurate and reflect the quantity of the ingredient that is actually present in the product throughout its shelf life, unless the label indicates otherwise in a non-misleading manner.  Those applicable federal requirements are memorialized in 21 CFR 101.9(g)(3)-(4) and 21 CFR 101.36(f)(1).

61.    When an ingredient is declared in the Supplement Facts box, that ingredient "must be formulated to be at least equal to the value for that [ingredient] declared on the label."  21 CFR 101.9(4)(i).  Probiotiv's product fails that requirement.

62.    The California Sherman Law incorporates FDA labeling regulations into California law, meaning that a violation of FDA labeling rules is also a violation of California law, and can thus serve as the predicate for an "unlawful" business practice under the UCL (Cal. Bus. & Prof. Code § 172000).  *See* Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act … shall be the food labeling regulations of this state").

63.    Probiotiv's fine-print qualifier indicating that the amount is measured "at time of manufacture" does not cure the misleading nature of the primary claim, nor is it sufficient to override the consumer's reasonable expectation of receiving the labeled dose.  The product is therefore misbranded under 21 U.S.C. § 343(a) and 21 CFR Part 101, and its sale and marketing are "unlawful" under California's Unfair Competition Law.

---

[1] *Available at* https://www.fda.gov/media/115730/download.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

64.    Plaintiff BioGaia, a direct competitor in the probiotic supplement market, is harmed by Probiotiv's false advertising in the form of lost sales, diverted business, and an uneven playing field.  Probiotiv's false claims allow it to capture market share and consumer trust through deception rather than lawful competition.

## C.    Probiotiv's False and Deceptive "Natural" Claim

65.    Probiotiv marketed its PBT&G product by claiming that it was sourced from "natural" ingredients when, in fact, the product contains a host of unnatural or synthetic ingredients.

66.    Probiotiv included on labels and in online promotional images a badge indicating that the product is "Natural":



67.    Many of the ingredients used in Probiotiv's PBT&G product are synthetically sourced or heavily processed to a point where the ingredient loses its "natural" character.  For example, mannitol is a sugar alcohol synthetically derived through the hydrogenation of fructose from cornstarch.  Though naturally occurring in some fruits and vegetables, commercial production is typically synthetic.

68.    Microcrystalline cellulose is a refined wood pulp used as a binder or filler.  While plant-derived, it is highly processed and chemically treated.

69.    Crospovidone is a synthetic, cross-linked polymer of polyvinylpyrrolidone (PVP), used as a disintegrant.  It is not a naturally derived substance.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

70.   Stearic acid can be naturally derived from vegetable or animal fat, but in supplements it is usually sourced from industrial-grade materials and is chemically processed.

71.   Vegetable magnesium stearate is a lubricant in tablet manufacturing. Through "vegetable" derived in theory, it is chemically synthesized and highly processed for use in food manufacturing.

72.   Silicone dioxide is a synthetic anti-caking agent produced from silica.

73.   Sucralose is an artificial sweetener created through the chlorination of sucrose.  It is not naturally occurring.

74.   Accordingly, Probiotiv's product contains at least eight ingredients that are synthetic, semi-synthetic, or highly processed.

75.   Probiotiv markets its product as "natural" to convey a core marketing message to health-conscious consumers seeking products free from artificial, synthetic, or chemically processed ingredients.

76.   Probiotiv's use of the term "natural" in advertising is likely to mislead reasonable consumers into believing that the product is composed entirely of ingredients that are found in nature and minimally processed.  That misrepresentation is material to purchasing decisions and allows Probiotiv to secure market share to BioGaia's detriment.

77.   The FDA has made clear that "natural" labels are misleading where the products, in fact, contain artificial or synthetic ingredients.  *See* 58 Fed. Reg. 2302, 2307 (Jan. 6, 1993) (permitting "natural" labels only when "nothing artificial or synthetic … has been included in, or has been added to, a food that would not normally be expected in the food").  Courts have therefore upheld claims where a product is deceptively marketed as "natural."  *See, e.g.*, *Shank v. Presidio Brands, Inc.*, No. 17-CV-00232, 2018 WL 1948830, at *1 (N.D. Cal. Apr. 25, 2018).

78.    Here Probiotiv's product contains a host of synthetic, artificial, or heavily processed ingredients.  The use of these ingredients renders Probiotiv's "natural" claim false and deceptive.

### D.    Probiotiv's Unlawful and Misleading Treatment Claims

79.    Probiotiv is marketed as a dietary supplement.  Under the DSHEA (including 21 U.S.C. § 321(ff)), dietary supplements may be sold only under certain conditions.  Apart from several narrow exceptions not applicable here, dietary supplements may not make "disease" claims.  *See* 21 U.S.C. § 321(g)(1) (defining a "drug" as any product intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease).  Dietary supplements may use "structure/function" claims that describe the product's effect on a normal structure or function of the body.  *See* 21 CFR 101.93.  But structure/function claims may not reference disease or abnormal conditions and cannot appear on a product label absent the required disclaimer in Section 101.93(c).

80.    An impermissible "disease" claim is defined by FDA regulation in 21 CFR 101.93(g)(2), which is incorporated by reference under California law. Violations of Section 101.93(g) are therefore actionable under the California UCL. Under those laws, a structure/function claim is impermissible where the product purports to diagnose, mitigate, treat, cure, or prevent disease if it claims, explicitly or implicitly, that the product, among other factors, has an effect on a specific disease or class of diseases; has an effect on the characteristic signs or symptoms of a specific disease or class of diseases; or has an effect on an abnormal condition associated with a natural state or process.

81.    Here, Probiotiv's claims violate the regulatory prohibitions in Section 101.93.  Probiotiv repeatedly references treatment for "halitosis," "tonsil stone," and "gingivitis."

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

82. Prevention of gingivitis is the primarily selling point for Probiotiv's product. For example, the product's primary header displays the following text:

Oral Probiotics for Mouth Bad Breath 7 Billion CFU - Chewable Dental Probiotics for Teeth and Gums, Fresh Breath Freshener, Combats Dry Mouth, Halitosis, Tonsil Stone & Gingivitis Treatment

83. Probiotiv consistently references "Gingivitis" in other sections of its product listing pages:



84. The FDA has determined that "Gingivitis" is a disease condition. *See, e.g.*, Warning Letter to ICA Health LLC (Sep. 20, 2021). Dietary supplements cannot lawfully claim to treat or prevent this type of ailment. Moreover, Probiotiv omits from its online listings the required structure/function disclaimer under Section 101.93(c), which is required when advancing any structure/function claim to prevent consumer confusion of the product's intended use.

85. Section 101.93(b) requires the disclaimer on labels and "labeling" of dietary supplements. "A website qualifies as labeling within the meaning of the

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

FDCA because it is 'written, printed, or graphic matter ... accompanying [the product].'" *United States v. Berst*, No. 6:11-CV-6370, 2012 WL 4361408, at *4 (D. Or. Aug. 2, 2012), *report and recommendation adopted,* No. 6:11-CV-6370-TC, 2012 WL 4361559 (D. Or. Sept. 20, 2012); *see also* 21 U.S.C. § 321(m). Probiotiv has reaped a competitive advantage by marketing product in violation of those food labeling laws.

86.    Probiotiv has not taken steps to lawfully market product with disease treatment claims, rendering the product unapproved for sale under state law. *See* Cal. Health & Safety Code §§ 111550, 111295, 109925(a). Under Cal. Health & Safety Code § 111550, it is unlawful to sell a dietary supplement that advances "drug" or disease claims in California unless the drug is approved by the California Department of Public Health (CDPH) or otherwise marketed in conformity with Section 111550(a).

87.    Here Probiotiv's unlawful claims are intended to and do confer a commercial advantage over competitors, including BioGaia, by falsely suggesting that Probiotiv's PBT&G product is effective in treating conditions without undergoing the rigorous scrutiny required for comparable products. Those claims cause ongoing harm to BioGaia and the integrity of the supplement marketplace.

### E.    Probiotiv's False and Deceptive "Made in USA" Claim

88.    Probiotiv advertises its PBT&G Product as "Made in USA," despite sourcing its ingredients from international manufacturers.

89.    The "Made in USA" claim appears prominently on product labeling, marketing materials, and online sales platforms, and was not qualified by any disclosure informing consumers that key ingredients originate from foreign countries.

90.    Consumers reasonably interpret "Made in USA" to mean that the product is wholly or almost completely made in the United States, with all or virtually all components and processing originating domestically.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

91.     Those representations are false and misleading.  The Federal Trade Commission's "Made in USA" enforcement policy provides that unqualified claims are deceptive unless "all or virtually all" of the product is made in the United States. *See* 16 CFR Part 323.  Labeling a product as "Made in USA" while using substantial foreign inputs is a deceptive practice in violation of Section 5 of the FTC Act.

92.     On information and belief, Probiotiv maintains no manufacturing presence in the United States.  It also has no FEI number issued by FDA and appears to have at most a limited presence within the United States consisting of a mail drop address acquired to incorporate in the State of Delaware.

93.     A false or deceptive "Made in USA" claim is also actionable under state. *See, e.g.*, *Silber v. Shop-Vac Corp.*, No. 08-CV-637, 2009 WL 10671927, at *2 (S.D. Cal. Feb. 27, 2009); *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 647 (C.D. Cal. 2021).  Under Cal. Bus. & Prof. Code § 17533.7(a), "[i]t is unlawful … to sell or offer for sale in [California] any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," … or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

94.     Defendant's misrepresentations deceive consumers into paying a premium under the false impression that the product is domestically sourced and manufactured, when it contains significant foreign content.  As a result, Probiotiv's conduct violates state and federal prohibitions on false and misleading advertising under, including the California UCL and Lanham Act.

/ / /

/ / /

/ / /

/ / /

/ / /

# V.   COUNTS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Unfair Competition Under Section 43(a)(1)(B) of the Lanham Act
### [15 U.S.C. § 1125(a)(1)(b)]

95.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

96.   Defendant has violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by engaging in false advertising and unfair competition through the use of false and misleading statements in commercial advertising and promotions concerning the nature, characteristics, and qualities of its Probiotiv PBT&G dietary supplement product.

97.   Defendant made false or misleading statements of fact in commercial advertising or promotion about its product.

98.   The statements and conduct described above deceive or are likely to deceive a substantial segment of their audience.

99.   The deception is material, in that it is likely to influence purchasing decisions.

100.   The product is placed in interstate commerce, and Plaintiff has been or is likely to be injured as a result, either by direct diversion of sales, loss of goodwill, or harm to competitive positioning.

101.   Defendant's false and misleading commercial statements include, but are not limited to, the following deceptive practices:

    a. Advertising that the PBT&G Product contains "7 Billion CFU" of probiotics per serving when the actual CFU content at the time of consumer purchase or use is substantially lower;

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

b. Misleadingly labeling the product with Supplement Facts panel declarations that do not accurately reflect the amount of viable probiotics through the end of shelf life;

c. Creating and amplifying fake or deceptive product reviews on Amazon and other e-commerce platforms to falsely bolster the product's appearance of quality and effectiveness;

d. Falsely and misleadingly representing that its product is "Made in USA" when the product is, in fact, manufactured abroad and sourced from international ingredients; and

e. Falsely and misleadingly representing that its product is "natural" when, in fact, the product contains a host of synthetic, semi-synthetic, or heavily processed ingredients that are not "natural" when used in Defendant's Product.

102. Those misrepresentations and omissions are made in interstate commerce and intended to deceive and materially influence consumers, retailers, and online platforms into purchasing and promoting Probiotiv over competitor products.

103. As a direct and proximate result of Defendant's false advertising, Plaintiff BioGaia has suffered competitive injury including, but not limited to, diversion of sales, loss of market share, and the erosion of consumer trust in the marketplace for probiotic supplements.

104. This is an exceptional case under 15 U.S.C. § 1117(a), warranting an award of attorneys' fees and treble damages because of Defendant's knowing, willful, and egregious misconduct in disseminating false and misleading advertising and misrepresenting its product's qualities.

105. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover compensatory damages, Defendant's profits, and any other remedies available at law or in equity, including injunctive relief, costs of suit, and pre- and post-judgment interest.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

23

**SECOND CLAIM FOR RELIEF**

**Unfair or Unlawful Business Practices**

**[Cal. Bus. & Prof. Code § 17200, *et seq.*]**

106.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth above.

107.    Defendant has engaged in unlawful business acts and practices in violation of California Business & Professions Code § 17200 et seq. (the "Unfair Competition Law" or "UCL"), specifically under the "unlawful" prong, by violating multiple independent statutes and regulatory frameworks governing advertising, labeling, and the sale of dietary supplements.

108.    The UCL "protect[s] both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. The Superior Court*, 51 Cal. 4th 310, 320 (2011).  Competitors therefore have standing to pursue claims under the UCL.  *See Rodeo Realty, Inc. v. Santangelo*, No. 11-CV-08372, 2012 WL 13012469, at *3 (C.D. Cal. June 14, 2012) ("A business may bring suit under the UCL against a competitor when the competitor engages in any unlawful, unfair, or fraudulent business act or practice.").

109.    The UCL's "unlawful" prong incorporates other laws and treats violations of those laws as independently actionable unfair competition.  Defendant's conduct violates, without limitation, the following laws, which serve as predicate unlawful acts for purposes of the UCL.

    a.    Violation of FTC regulations prohibiting advertising practices involving false, contrived, or biased product reviews absent disclosure of such practices.  *See* FTC Trade Regulation Rule on the Use of Consumer Reviews and Testimonials, 16 CFR Part 465.

    b.    Violation of FDA laws and regulations governing the food and dietary supplement labeling practices, including 21 CFR §§ 101.36, 101.9,

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

101.93, which are adopted by the State of California under the Sherman Law. *See* Cal. Health & Safety Code § 110100(a).

   c. Violation of California restrictions on the sale of dietary supplements with disease treatment claims. *See* Cal. Health & Safety Code §§ 111550.

   d. Violation of Cal. Bus. & Prof. Code § 17533.7 and 16 CFR Part 323 which prohibit false and misleading "Made in U.S.A." claims on labels and labeling.

110. Plaintiff is entitled to recover injunctive or equitable relief to prevent continuing violations.

**THIRD CLAIM FOR RELIEF**
**Unfair or Unlawful Business Practices**
**[Cal. Bus. & Prof. Code § 17200, *et seq.*]**

111. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth above.

112. Defendants have engaged in false and misleading advertising in violation of California Business and Professions Code § 17500 et seq. (the "FAL"), which prohibits any person, corporation, or association from making or disseminating any statement concerning consumer goods that is untrue or misleading and which is known, or by exercise of reasonable care should be known, to be untrue or misleading.

113. Defendants have made and disseminated advertising statements to California consumers through online marketplaces, including Amazon, as well as through the product packaging and labeling of their Probiotiv PBT&G Product. Those statements include, but are not limited to:

   a. Falsely advertising that the product contains billions of colony forming units (CFUs) at the time of purchase or consumption, when testing otherwise shows substantially lower live microorganism counts;

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

25

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

b. Advertising products as "natural," despite the inclusion of synthetic and artificial ingredients like sucralose, silicone dioxide, and artificial binding agents;

c. Making "Made in the USA" claims on product listings and labels without satisfying California state standards, which require that all or virtually all components be made or sourced domestically; and

d. Disseminating or orchestrating fake customer reviews and inflated star ratings to mislead consumers regarding product quality and efficacy;

114.    These advertising statements were untrue or misleading, and Defendants knew, or by the exercise of reasonable care should have known, that the statements were false or misleading.

115.    The consuming public was likely to be—and in fact was—deceived by these misrepresentations and omissions.  Plaintiff has therefore suffered an injury in fact and lost money as a result of those violations, including through diverted sales and lost market share due to unfair competition caused by Defendants' false advertising practices.

## FOURTH CLAIM FOR RELIEF
### Common Law Unfair Competition

116.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth above.

117.    "The cause of action of common law unfair competition generally redresses 'deceptive conduct' or conduct that otherwise lies outside the ordinary course of business and is tainted by fraud or coercion." *Silverlit Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*, No. 08-CV-07631, 2010 WL 11509314, at *6 (C.D. Cal. Jan. 21, 2010).  "Competition is 'unfair' under the common law, if it 'involves wrongful conduct such as fraud, misrepresentation, intimidation, coercion, or

26

obstruction.'" *Id.* (quoting *Scudder Food Products, Inc. v. Ginsberg*, 21 Cal. 2d 596, 599 (1943)).

118.   Common law unfair competition under California law involves the misappropriation of a competitor's goodwill or investment in property without authorization or consent, thus causing injury. *See Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843, 2007 WL 3289142, at \*6 (N.D. Cal. Nov. 5, 2007); *Kim v. Ferry*, No. 08-CV-05433, 2009 WL 10671425, at \*5 (C.D. Cal. Feb. 18, 2009).

119.   Defendant's actions constitute unfair competition under California common law, which prohibits unlawful, unfair, and fraudulent business practices, including those that involve deception, misrepresentation, false advertising, and misappropriation of economic advantage through unfair means.

120.   Defendant engaged in a systematic course of conduct designed to mislead consumers and secure an unfair commercial advantage over lawful competitors, including Plaintiff BioGaia.  This conduct includes, but is not limited to: (a) materially overstating the quantity of active probiotic organisms (*i.e.*, colony-forming units) present in Probiotiv's product; and (b) artificially inflating online product reviews and rankings, including on Amazon.com, to deceive consumers about the product's quality and to manipulate search algorithms.

121.   Defendant's conduct was undertaken knowingly, willfully, and with the intent to deceive and to interfere with Plaintiff's competitive standing in the marketplace.  Defendant has reaped substantial financial benefits by means of this conduct, all at the expense of Plaintiff and other law-abiding competitors.

122.   As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and continues to suffer economic harm, including lost sales, diverted customers, reputational harm, and loss of market share.

123.   Defendant's conduct also threatens future harm to Plaintiff if not enjoined.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

27

124.   Plaintiff is entitled to all appropriate remedies available under the common law, including compensatory damages and injunctive relief to prevent the continuation of Defendant's unlawful and unfair practices.

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, and grant the following relief:

1.   A permanent injunction under the Lanham Act, Cal. Bus. & Prof. Code §§ 17200 et seq., and California common law, enjoining Defendant, its officers, agents, employees, representatives, successors, assigns, and all persons acting in concert or participation with them, from engaging in the deceptive and unfair practices identified above.

2.   A declaration that Defendant's advertising and sale of its PBT&G Product violates Section 43(a) of the Lanham Act, violates California's Unfair Competition Law, and constitutes unfair competition under California common law.

3.   An award of actual and compensatory damages sustained by BioGaia as a result of Defendant's unlawful acts, including lost profits, market share, and business opportunities, in an amount to be determined at trial.

4.   An award of treble damages under 15 U.S.C. § 1117(a) based on the willful and exceptional nature of Defendant's Lanham Act violation.

5.   An award requiring Defendant to undertake corrective advertising or measures sufficient to remedy the false and misleading impressions created in the marketplace for the Probiotic products.

6.   An award of reasonable attorneys' fees, costs of suit, and litigation expenses as authorized by statute, including 15 U.S.C. § 1117(a) and Cal. Code Civ. Proc. § 1021.5.

7.   Prejudgment and post-judgment interest at the maximum rate permitted by law.

8.      Any other relief that the Court may deem just, proper, and equitable.

DATED:  April 24, 2025.

Respectfully submitted,


 /s/ Peter A. Arhangelsky
Peter A. Arhangelsky (SBN 291325)
peter.arhangelsky@gtlaw.com
GREENBERG TRAURIG, LLP
*Attorney for BioGaia USA, LLC*